# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**Case No.:**

GOVERNMENT EMPLOYEES
INSURANCE CO., GEICO
INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO
CASUALTY CO.,                                          **Jury Trial Demand**

      Plaintiffs,

vs.

ORLANDO INJURY MEDICAL
CARE, L.L.C, MAXIME COLES, M.D.,
ST. LUCIE WELLNESS AND REHAB,
L.L.C., VISIONARY SPA HEALTH
CARE, L.L.C., PALM BEACH MEDI-
CHIRO CENTER, INC., and NAPLES
INJURY CARE, L.L.C.,

      Defendants.

_____

## <u>COMPLAINT</u>

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co.,

GEICO General Insurance Company, and GEICO Casualty Co. (collectively

"GEICO" or "Plaintiffs"), sue Defendants and allege as follows:

1.      This action seeks to recover more than $2,000,000.00 that the

Defendants wrongfully obtained from GEICO by submitting thousands of fraudulent

and unlawful no-fault ("no-fault", "personal injury protection", or "PIP") insurance

charges through Defendants Orlando Injury Medical Care, L.L.C. ("Orlando Injury"), St. Lucie Wellness and Rehab, L.L.C. ("St. Lucie Wellness"), Visionary Spa Health Care, L.L.C. ("Visionary Health"), Palm Beach Medi-Chiro Center, Inc. ("Palm Beach Medi-Chiro"), and Naples Injury Care, L.L.C. ("Naples Injury"), (collectively, the "Coles Entities"), relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services and goods, including purported examinations, physical therapy services, and chiropractic services (collectively the "Fraudulent Services"), that purportedly were provided to Florida automobile accident victims ("Insureds") who were eligible for coverage under GEICO no-fault insurance policies.

2.      In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending, fraudulent and unlawful PIP claims that the Defendants caused to be submitted through the Coles Entities.

3.      As set forth more fully herein, the Defendants never were entitled to PIP insurance reimbursement in connection with the billing they submitted to GEICO, because:

(i)      at all relevant times, the Defendants: (a) operated in violation of the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"); (b) operated in violation of Florida's patient brokering act, Fla. Stat § 817.505 (the "Patient Brokering Act"); (c) operated in violation of Fla. Stat. § 817. 234(7) (the "False and Fraudulent Insurance Claims Statute"); and (d) operated in violation of Florida's anti-kickback statute, Fla. Stat. § 456.054 (the "Anti-Kickback Statute");

2

(ii)    in many cases, the Defendants' billing misrepresented the identities of the individuals who performed or directly supervised the Fraudulent Services, and was submitted in violation of the billing requirements set forth in the Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law");

(iii)    the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them;

(iv)    in many cases, the Fraudulent Services never were provided in the first instance; and

(v)    the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently inflate the charges submitted to GEICO.

4.    Each charge submitted through the Coles Entities since at least 2019 has been fraudulent and unlawful for the reasons set forth herein. The charts annexed hereto as Exhibits "1" – "5" set forth large and representative samples of the fraudulent and unlawful claims that have been identified to date that the Defendants submitted to GEICO by mail through the respective Coles Entities.

5.    The Defendants' interrelated fraudulent schemes began no later than 2020 and have continued uninterrupted since that time.

## **THE PARTIES**

### I.    **Plaintiffs**

6.    Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively,

"GEICO") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

## II.  **Defendants**

7.     Defendant Maxime Coles, M.D. ("Coles") resides in and is a citizen of Florida.

8.     Coles was licensed to practice medicine in Florida in 2016.

9.     Coles purported to own and control the Coles Entities, purported to perform or directly supervise many of the Fraudulent Services at the Coles Entities, and caused fraudulent and unlawful PIP insurance billing to be submitted through the Coles Entities to GEICO and other insurers.

10.    Coles has a history of professional misconduct that has led to professional discipline in multiple states. In particular, beginning in June 2021, Coles' medical license was subject to discipline in multiple states, including Florida, following a finding by the Board of Healing Arts of the State of Kansas that Coles had: (i) abandoned his patients' medical records in a building that was foreclosed on and deeded to a bank; (ii) failed to maintain patient medical records for the requisite ten year period; and (iii) refused to provide information to state regulatory authorities regarding the destruction of medical records.

11.    As a result of these findings, Coles was publicly censured by the Board of Healing Arts of the State of Kansas and was fined by the Florida Board of Medicine, among other penalties.

12.    Upon information and belief, Coles' history of professional discipline – which is a matter of public record that can be accessed by potential patients, employers, and referral sources – has made it difficult for him to obtain legitimate employment as a physician, and contributed to his motive to participate in the fraudulent and unlawful scheme described herein.

13.    Defendant Orlando Injury is a Florida limited liability company with its principal place of business in Orlando, Florida.

14.    Orlando Injury was organized on or about December 20, 2020, had Coles as its purported member, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

15.    At all relevant times, Orlando Injury falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

16.    Defendant St. Lucie Wellness is a Florida limited liability company with its principal place of business in Port St. Lucie, Florida.

17.    St. Lucie Wellness was organized on or about January 15, 2021, had Coles as its purported member, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

18.    At all relevant times, St. Lucie Wellness falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

19.    Defendant Visionary Health is a Florida limited liability company with its principal place of business in Delray Beach, Florida.

20.    Visionary Health was organized on or about July 31, 2021, had Coles as its purported member, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

21.    At all relevant times, Visionary Health falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

22.    Defendant Palm Beach Medi-Chiro is a Florida corporation with its principal place of business in Greenacres, Florida.

23.    Palm Beach Medi-Chiro was incorporated in Florida on or about September 21, 2020, purported to be owned by Coles, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

24.    At all relevant times, Palm Beach Medi-Chiro falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

25.    Defendant Naples Injury is a Florida limited liability company with its principal place of business in Naples, Florida.

26.    Naples Injury was organized on or about January 25, 2021, had Coles as its purported member, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

27.    At all relevant times, Naples Injury falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

## III.    <u>Other Relevant Entities and Individual</u>

28.    Although they have not been named as Defendants in this action, Clear Choice EMC, Inc. ("Clear Choice"), SWFL Dignostic[1] Service, LLC ("SWFL Diagnostic"), and Jean-Claude Labissiere, M.D. ("Labissiere") are relevant to understanding Plaintiffs' claims in this action.

29.    Labissiere is a licensed physician, who who at all relevant times purported to own and control Clear Choice and SWFL Diagnostic, which are a Florida corporation and limited liability company, respectively.

---

[1] SWFL Diagnostic's name is misspelled as "SWFL Dignostic" in its corporate filings.

7

30.    As discussed below, Labissiere used Clear Choice and SWFL Diagnostic to engage in unlawful patient brokering schemes with Coles and the Coles Entities.

## ALLEGATIONS

## I.    Pertinent Law Governing No-Fault Insurance Reimbursement

37.    Florida's No-Fault Law requires automobile insurers such as GEICO to provide PIP insurance benefits ("PIP Benefits") to Insureds when they are injured in motor vehicle accidents.

38.    Under the No-Fault Law, a health care services provider that possesses a valid assignment of PIP Benefits from an Insured and that provides medically necessary health care services to an Insured may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form" or "CMS-1500" form).

39.    In order for a health care service to be eligible for PIP reimbursement, it must be "lawfully" provided, medically necessary, and the bill for the service cannot misrepresent the nature or extent of the service that was provided. Furthermore, insurers such as GEICO are not required to pay anyone who knowingly submits a false or misleading statement relating to a PIP claim or charges.

40.    By listing a health care practitioner in Box 31 of a HCFA-1500 form, the billing provider represents that the practitioner performed or directly supervised the underlying services, and "[t]o directly supervise, a doctor must be physically present at the facility".

41.    Additionally, in order for a health care service to be eligible for PIP reimbursement, the applicable claim form must set forth the professional license number of the provider who personally performed or directly supervised the underlying health care service, in the line or space provided for "Signature of Physician or Supplier, Including Degrees or Credentials."

42.    Insurers such as GEICO are not required to pay PIP Benefits to health care providers that misrepresent, in their billing, the identity of the individual health care practitioner who performed or directly supervised the underlying services.

43.    Under the False and Fraudulent Insurance Claims Statute, it is unlawful for a health care provider to engage in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from PIP patients.

44.    Failure to make a good-faith effort to collect co-payments or deductibles renders the charges submitted by a health care provider unlawful and noncompensable.

45.    Furthermore, Florida's Patient Brokering Act broadly prohibits any person from offering, paying, soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

46.    Likewise, Florida's Anti-Kickback Statute prohibits any health care provider from offering, paying, soliciting, or receiving a kickback, directly or indirectly, overtly or covertly, in cash or in kind, in exchange for patient referrals. Violations of the Anti-Kickback Statute also constitute violations of the Patient Brokering Act.

47.    Insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Patient Brokering Act or Anti-Kickback Statute, whether or not the underlying health care services were medically necessary or actually provided.

48.    PIP reimbursement for health care services is limited to $2,500.00 per injured person, unless a physician, physician assistant, or advanced practice registered nurse determines that the injured person suffered from an "emergency medical condition", in which case health care providers can be reimbursed up to $10,000.00 for health care services.

49.    Pursuant to the No-Fault Law, an "emergency medical condition" means a "medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) serious jeopardy to patient health. (b) serious impairment to bodily functions. (c) serious dysfunction of any bodily organ or part."

50.    Subject to certain limited exceptions, and pursuant to the Clinic Act, a license issued by the Florida Agency for Health Care Administration is required in order to operate a "clinic" in Florida. The Clinic Act defines "clinic" to mean "an entity where health care services are provided to individuals and which tenders charges for reimbursement for such services, including a mobile clinic and a portable equipment provider."

51.    However, the Clinic Act provides an exemption from the clinic licensing requirements for:

A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners . . . that is wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner if one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws.

52.    Therefore, in order for a health care practice to qualify for this "wholly owned" exemption under the Clinic Act, the licensed health care practitioner who

11

"wholly owns" the practice has a continuing obligation to legitimately supervise the business activities of the clinic and remain legally responsible for the clinic's compliance with all federal and state laws.

53.    Pursuant to the Clinic Act, health care practices operating in Florida without a valid exemption from the health care clinic licensing requirements must – among other things – appoint a medical director who must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful", and take immediate corrective action upon discovery of a fraudulent or unlawful charge. In addition, a clinic medical director must "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided."

54.    Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed . . . but that is not so licensed, or that is otherwise operating in violation of this part . . . is an unlawful charge" and is ineligible for payment. See Fla. Stat. § 400.9935(3).

## II.    <u>The Defendants' Interrelated Fraudulent and Unlawful Schemes</u>

55.    Since at least 2020, and continuing through the present day, the Defendants implemented interrelated fraudulent schemes in which they caused GEICO to be billed millions of dollars for unlawful, medically unnecessary, illusory, and otherwise non-reimbursable services.

A.    **The Unlawful Operation of the Coles Entities in Violation of the Clinic Act**

56.    Although the Coles Entities purported to be exempt from the Clinic Act's health care clinic licensure requirements, the Coles Entities operated without valid exemptions and, as a result, operated as unlicensed health care clinics and in violation of the Clinic Act.

57.    In particular, though Coles purported to operate the Coles Entities pursuant to the "wholly owned" exemption from the Clinic Act's licensing and medical director requirements, Coles failed to legitimately supervise the Coles Entities' business activities – as required by the Clinic Act – and, as a result, none of the Coles Entities qualified for the "wholly owned" exemption from the Clinic Act's health care clinic licensure requirements.

58.    Coles did not legitimately supervise the business activities of the Coles Entities, inasmuch as Coles never conducted reviews of the billing or treatment records from the Coles Entities to ensure that the billing was not fraudulent or unlawful, and – to the contrary – permitted the submission of the fraudulent and unlawful charges through the Coles Entities to GEICO and other insurers.

59.    Indeed, given the fraudulent and unlawful treatment and billing protocol described below – which was pervasive across all of the billing submitted to GEICO through the Coles Entities – there is no way that Coles could have legitimately supervised the business activities of the Coles Entities to ensure that the

billing was not fraudulent or ensure compliance with all applicable federal and state laws as required by the Clinic Act.

60.    Had Coles legitimately supervised the business activities of the Coles Entities, he would have noted, among other things, that:

(i)    the Coles Entities were – as set forth herein – operated in pervasive violation of, variously, the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the False and Fraudulent Insurance Claims Statute;

(ii)    the Fraudulent Services purportedly provided by and billed through the Coles Entities were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol;

(iii)    Naples Injury and Palm Beach Medi-Chiro routinely misrepresented the identities of the individual health care practitioners who actually performed or directly supervised the Fraudulent Services billed through Naples Injury and Palm Beach Medi-Chiro to GEICO;

(iv)    in many cases, the Fraudulent Services purportedly provided by and billed through the Coles Entities were never provided in the first instance; and

(v)    the billing codes used for the Fraudulent Services purportedly provided by and billed through the Coles Entities misrepresented and exaggerated the level of services that were provided in order to fraudulently inflate the charges submitted to GEICO.

61.    In keeping with the fact that Coles failed to legitimately supervise the business activities of the Coles Entities, when interviewed by a GEICO investigator in April 2022, Coles denied owning any health care practices in the state of Florida.

62.    Coles did, however, claim to provide "medical director services" for Naples Injury and St. Lucie Wellness, but claimed that he only visited those clinics once per month.

63.    What is more, Coles specifically denied having any knowledge of Visionary Health or Palm Beach Medi-Chiro.

64.    Accordingly, the Coles Entities never qualified for the "wholly owned" exemption from licensure as "health care clinics". Nor did the Coles Entities qualify for any other exemption to the Clinic Act, or have medical directors and clinic licenses as required for health care clinics without an exemption. As a result, the Coles Entities operated – at all relevant times – in violation of the Clinic Act.

**B.    The Defendants' Unlawful General Business Practice of Failing to Make a Good-Faith Effort to Collect Co-Payments or Deductibles from Their Patients**

65.    In keeping with the fact that the Coles Entities lacked legitimate supervision by Coles and therefore operated in violation of the Clinic Act, the Defendants unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

66.    For instance, in virtually all of the thousands of bills (i.e., the HCFA-1500 forms) submitted through the Coles Entities to GEICO for the Defendants'

Fraudulent Services, the Coles Entities represented that they did not collect any money, whether it be co-payments or deductibles, from their patients.

67.     In the claims identified in Exhibits "1" – "5", the Defendants routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because the Defendants engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

**C.     The Unlawful Patient Brokering Between Coles, St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, Labissiere, SWFL Diagnostic, and Clear Choice**

68.     To the extent that the Insureds in the claims set forth in Exhibits "1" - "5" suffered any injuries at all in their automobile accidents, they virtually always were minor soft tissue injuries such as sprains or strains. These minor soft tissue injuries did not constitute legitimate "emergency medical conditions".

69.     For instance, and in keeping with the fact that the Insureds in the claims identified in Exhibits "1" - "5" did not legitimately suffer from any "emergency medical conditions", in the substantial majority of the claims identified in Exhibits "1" - "5" the Insureds did not seek treatment at any hospital as the result of their accidents.

70.     To the limited extent that the Insureds did report to a hospital after their accidents, they virtually always were briefly observed on an outpatient basis and then sent on their way after a few hours with, at most, a minor sprain, strain, or similar soft-tissue injury diagnosis.

71.     Furthermore, in most cases, contemporaneous police reports indicated that the underlying accidents involved low-speed, low-impact collisions, that the Insureds' vehicles were drivable following the accidents, and that no one was seriously injured in the underlying accidents, or injured at all.

72.     Even so, St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, and Coles wanted to bill GEICO and other insurers for a large amount of expensive and medically unnecessary examinations, chiropractic, and physical therapy services, without regard for the fact that the Insureds had not suffered any injuries that would warrant these Fraudulent Services.

73.     However, St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, and Coles knew that – unless they could get a physician, physician assistant, or advanced practice registered nurse to falsely report that their patients suffered from "emergency medical conditions" – they would be limited to recovering $2,500.00 in PIP Benefits per patient, as opposed to the $10,000.00 per patient they could potentially recover if the patients had "emergency medical condition" diagnoses.

17

74.    At the same time, SWFL Diagnostic, Clear Choice, and Labissiere wanted to submit as much PIP billing as possible for expensive and medically unnecessary examinations and testing, without regard for the fact that the Insureds had not suffered any injuries that would warrant these Fraudulent Services.

75.    However, in order to bill GEICO and other insurers for medically unnecessary examinations and testing, SWFL Diagnostic, Clear Choice, and Labissiere needed to obtain patient referrals from other health care providers, such as St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, and Coles.

76.    Accordingly, St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, Coles, SWFL Diagnostic, Clear Choice, and Labissiere entered into a secret and unlawful patient brokering agreement, whereby, in exchange for patient referrals from St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, and Coles for expensive and medically unnecessary examinations and testing, SWFL Diagnostic, Clear Choice, and Labissiere agreed to provide the Insureds with false "emergency medical condition" diagnoses, which enabled St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, and Coles to submit substantial additional PIP billing per Insured for medically unnecessary chiropractic, physical therapy, and testing.

18

77.    In reality, these were "pay-to-play" arrangements that caused St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, Coles, SWFL Diagnostic, Clear Choice, and Labissiere to make and receive medically unnecessary patient referrals in violation of the Patient Brokering Act and Anti-Kickback Statute.

78.    For example:

(i)    On or about December 23, 2020, St. Lucie Wellness and Coles referred an Insured named DM to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled St. Lucie Wellness and Coles to submit thousands of dollars in additional PIP billing through St. Lucie Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(ii)    On or about January 22, 2021, Palm Beach Medi-Chiro and Coles referred an Insured named EC to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Palm Beach Medi-Chiro and Coles to submit thousands of dollars in additional PIP billing through Palm Beach Medi-Chiro to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(iii)    On or about January 22, 2021, Palm Beach Medi-Chiro and Coles referred an Insured named DC to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Palm Beach Medi-Chiro and Coles to submit thousands of dollars in additional PIP billing through Palm Beach Medi-Chiro to GEICO in connection with

the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(iv)     On or about July 22, 2021, St. Lucie Wellness and Coles referred an Insured named JT to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled St. Lucie Wellness and Coles to submit thousands of dollars in additional PIP billing through St. Lucie Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(v)      On or about April 4, 2022, St. Lucie Wellness and Coles referred an Insured named RJ to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled St. Lucie Wellness and Coles to submit thousands of dollars in additional PIP billing through St. Lucie Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(vi)     On or about May 6, 2022, Visionary Health and Coles referred an Insured named CV to Clear Choice EMC and Labissiere for a medically unnecessary examination, which then was billed through Clear Choice EMC to GEICO. As unlawful compensation for the referral, Clear Choice EMC and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Visionary Health and Coles to submit thousands of dollars in additional PIP billing through Visionary Health to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(vii)    On or about May 10, 2022, Visionary Health and Coles referred an Insured named CJ to Clear Choice EMC and Labissiere for a medically unnecessary examination, which then was billed through Clear Choice EMC to GEICO. As unlawful compensation for the referral, Clear

Choice EMC and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Visionary Health and Coles to submit thousands of dollars in additional PIP billing through Visionary Health to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(viii)  On or about May 12, 2022, Palm Beach Medi-Chiro and Coles referred an Insured named WF to Clear Choice EMC and Labissiere for a medically unnecessary examination, which then was billed through Clear Choice EMC to GEICO. As unlawful compensation for the referral, Clear Choice EMC and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Palm Beach Medi-Chiro and Coles to submit thousands of dollars in additional PIP billing through Palm Beach Medi-Chiro to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(ix)  On or about May 20, 2022, Naples Injury and Coles referred an Insured named DC to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Naples Injury and Coles to submit thousands of dollars in additional PIP billing through Naples Injury to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(x)  On or about December 1, 2022, Naples Injury and Coles referred an Insured named CJ to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Naples Injury and Coles to submit thousands of dollars in additional PIP billing through Naples Injury to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xi)    On or about February 2, 2023, Naples Injury and Coles referred an Insured named GH to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Naples Injury and Coles to submit thousands of dollars in additional PIP billing through Naples Injury to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xii)   On or about June 8, 2023, Palm Beach Medi-Chiro and Coles referred an Insured named SR to Clear Choice EMC and Labissiere for a medically unnecessary examination, which then was billed through Clear Choice EMC to GEICO. As unlawful compensation for the referral, Clear Choice EMC and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Palm Beach Medi-Chiro and Coles to submit thousands of dollars in additional PIP billing through Palm Beach Medi-Chiro to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xiii)  On or about July 4, 2023, St. Lucie Wellness and Coles referred an Insured named MB to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled St. Lucie Wellness and Coles to submit thousands of dollars in additional PIP billing through St. Lucie Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xiv)   On or about July 7, 2023, Palm Beach Medi-Chiro and Coles referred an Insured named GM to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured

with an "emergency medical condition", which enabled Palm Beach Medi-Chiro and Coles to submit thousands of dollars in additional PIP billing through Palm Beach Medi-Chiro to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xv)     On or about September 12, 2023, St. Lucie Wellness and Coles referred an Insured named ED to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled St. Lucie Wellness and Coles to submit thousands of dollars in additional PIP billing through St. Lucie Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xvi)    On or about February 9, 2024, Visionary Health and Coles referred an Insured named OD to Clear Choice EMC and Labissiere for a medically unnecessary examination, which then was billed through Clear Choice EMC to GEICO. As unlawful compensation for the referral, Clear Choice EMC and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Visionary Health and Coles to submit thousands of dollars in additional PIP billing through Visionary Health to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xvii)   On or about March 20, 2024, Visionary Health and Coles referred an Insured named KF to Clear Choice EMC and Labissiere for a medically unnecessary examination, which then was billed through Clear Choice EMC to GEICO. As unlawful compensation for the referral, Clear Choice EMC and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Visionary Health and Coles to submit thousands of dollars in additional PIP billing through Visionary Health to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xviii) On or about May 8, 2024, Naples Injury and Coles referred an Insured named MI to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Naples Injury and Coles to submit thousands of dollars in additional PIP billing through Naples Injury to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xix) On or about May 23, 2024, Visionary Health and Coles referred an Insured named GB to Clear Choice EMC and Labissiere for a medically unnecessary examination, which then was billed through Clear Choice EMC to GEICO. As unlawful compensation for the referral, Clear Choice EMC and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Visionary Health and Coles to submit thousands of dollars in additional PIP billing through Visionary Health to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

(xx) On or about June 4, 2024, Naples Injury and Coles referred an Insured named MA to SWFL Diagnostic and Labissiere for a medically unnecessary examination, which then was billed through SWFL Diagnostic to GEICO. As unlawful compensation for the referral, SWFL Diagnostic and Labissiere falsely diagnosed the Insured with an "emergency medical condition", which enabled Naples Injury and Coles to submit thousands of dollars in additional PIP billing through Naples Injury to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured.

79.    These are only representative examples. In the claims identified in Exhibits "2" - "5", St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, Coles, SWFL Diagnostic, Clear Choice, and Labissiere routinely and

unlawfully made and received patient referrals in exchange for compensation, in violation of the Patient Brokering Act and Anti-Kickback Statute.

80.    In this context, there are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

81.    An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

82.    As set forth above, in the claims identified in Exhibits "2" - "5", almost all of the Insureds whom the Defendants purported to treat were involved in relatively minor accidents, and did not suffer any serious injuries in their accidents, much less any "emergency medical conditions".

83.    It is highly improbable that any two or more Insureds involved in any one of the relatively minor automobile accidents in the claims identified in Exhibits "2" - "5" would: (i) suffer from injuries so similar that they would all require referrals from Coles and St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, or Naples Injury to Labissiere, SWFL Diagnostic, or Clear Choice on or about the same date; and then (ii) receive "emergency medical condition" diagnoses from Labissiere, SWFL Diagnostic, or Clear Choice.

84.    It is even more improbable – to the point of impossibility – that this would occur repeatedly within the cohort of Insureds who purportedly received treatment from the Defendants.

85.    Even so – and in keeping with the fact that the Defendants' referrals were based upon unlawful compensation, rather than medical necessity – this repeatedly occurred within the cohort of Insureds who purportedly received treatment from St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, and Coles.

86.    For example:

(i)    On May 21, 2021, two Insureds – EB and UB – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about June 17, 2021, St. Lucie Wellness and Coles referred both of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(ii)    On June 30, 2021, two Insureds – CE and TD – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds

did not both require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about July 22, 2021, St. Lucie Wellness and Coles referred both of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(iii)    On August 21, 2021, two Insureds – AP and TP – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about September 8, 2021, St. Lucie Wellness and Coles referred both of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(iv)    On September 13, 2021, three Insureds – KS, IL, and FS – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not all require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about September 21, 2021, St. Lucie Wellness and Coles referred all three of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(v)    On November 4, 2021, two Insureds – GC and DD – were involved in the same automobile accident. These Insureds were different ages, in

27

different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about December 7, 2021, St. Lucie Wellness and Coles referred both of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(vi)     On November 13, 2021, two Insureds – JV and BR – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Palm Beach Medi-Chiro and Coles on or about the same date after the accident. Even so, on or about December 12, 2021, Palm Beach Medi-Chiro and Coles referred all four of these Insureds to Clear Choice and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(vii)    On December 24, 2021, <u>four</u> Insureds – JM, SS, WC, and WM – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not all require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about February 2, 2022, St. Lucie Wellness and Coles referred all four of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical

condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(viii)  On January 24, 2022, two Insureds – MT and MS – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about February 10, 2022, St. Lucie Wellness and Coles referred both of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(ix)  On February 3, 2022, two Insureds – FJ and JL – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Palm Beach Medi-Chiro and Coles on or about the same date after the accident. Even so, on or about February 28, 2022, Palm Beach Medi-Chiro and Coles referred both of these Insureds to Clear Choice and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(x)  On February 17, 2022, two Insureds – SW and AP – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds

did not both require referrals from Palm Beach Medi-Chiro and Coles on or about the same date after the accident. Even so, on or about February 28, 2022, Palm Beach Medi-Chiro and Coles referred both of these Insureds to Clear Choice and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xi)    On February 28, 2022, two Insureds – KR and RA – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Palm Beach Medi-Chiro and Coles on or about the same date after the accident. Even so, on or about May 12, 2022, Palm Beach Medi-Chiro and Coles referred both of these Insureds Clear Choice and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xii)    On March 15, 2022, two Insureds – MP and MR – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Palm Beach Medi-Chiro and Coles on or about the same date after the accident. Even so, on or about May 12, 2022, Palm Beach Medi-Chiro and Coles referred both of these Insureds Clear Choice and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xiii)   On June 6, 2022, three Insureds – MC, EP, and JD – were involved in the same automobile accident. These Insureds were different ages, in

different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not all require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about June 28, 2022, St. Lucie Wellness and Coles referred all three of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xiv)   On August 5, 2022, two Insureds – MD and ED – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about August 16, 2022, St. Lucie Wellness and Coles referred all four of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xv)   On August 17, 2022, three Insureds – RL, RJ, and JL – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not all require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about September 2, 2022, St. Lucie Wellness and Coles referred all three of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition"

diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xvi)   On September 7, 2022, <u>three</u> Insureds – PS, CJ, and HL – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not all require referrals from Palm Beach Medi-Chiro and Coles on or about the same date after the accident. Even so, on or about September 20, 2022, Palm Beach Medi-Chiro and Coles referred all three of these Insureds to Clear Choice and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xvii)  On April 30, 2023, <u>three</u> Insureds – GV, LJ, and GJ – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not all require referrals from Visionary Health and Coles on or about the same date after the accident. Even so, on or about May 15, 2023, Visionary Health and Coles referred all three of these Insureds to Clear Choice and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xviii) On June 9, 2023, two Insureds – BC and SC – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from St. Lucie Wellness and Coles on or

about the same date after the accident. Even so, on or about June 18, 2023, St. Lucie Wellness and Coles referred all four of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xix)    On December 25, 2023, <u>four</u> Insureds – EP, MP, GP, and RP – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not all require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about January 17, 2024, St. Lucie Wellness and Coles referred all four of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful patient brokering scheme.

(xx)    On January 25, 2024, two Insureds – SA and YR – were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from St. Lucie Wellness and Coles on or about the same date after the accident. Even so, on or about February 29, 2024, St. Lucie Wellness and Coles referred both of these Insureds to SWFL Diagnostic and Labissiere for medically unnecessary examinations, which resulted in false "emergency medical condition" diagnoses, pursuant to the Defendants' unlawful referral scheme.

87.    These are only representative examples. Pursuant to their unlawful patient brokering scheme, St. Lucie Wellness, Visionary Health, Palm Beach Medi-

Chiro, Naples Injury, and Coles routinely referred multiple Insureds who had been involved in the same accident to SWFL Diagnostic, Clear Choice, and Labissiere for medically unnecessary "emergency medical condition" examinations, despite the fact that the Insureds were differently situated and in any case did not require the examinations.

88.    In the claims identified in Exhibits "2" - "5", St. Lucie Wellness, Visionary Health, Palm Beach Medi-Chiro, Naples Injury, and Coles routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they were provided – to the extent that they were provided at all – pursuant an illegal patient brokering scheme.

**D.    Coles, Naples Injury, and Palm Beach Medi-Chiro's Misrepresentations Regarding the Identities of the Treating Practitioners at Naples Injury and Palm Beach Medi-Chiro**

89.    In the substantial majority of the bills submitted through Naples Injury and Palm Beach Medi-Chiro to GEICO, including bills for purported "physical therapy" and "chiropractic" services, Coles, Naples Injury, and Palm Beach Medi-Chiro input Cole's name into Box 31 of the HCFA-1500 forms/bills, thereby representing that Coles was physically present in Naples Injury and Palm Beach Medi-Chiro's office suites to perform or directly supervise these Fraudulent Services.

90.    In fact, however, Naples Injury and Palm Beach Medi-Chiro's bills routinely falsely represented that Coles was physically present at Naples Injury and Palm Beach Medi-Chiro to perform or directly supervise the Fraudulent Services, when in fact he was not.

91.    For example:

(i)    On February 24, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 99 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 24.75 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

(ii)    On February 26, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 77 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 19.25 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

(iii)    On March 2, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 87 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 21.75 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

(iv)  On March 10, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 85 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 20 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

(v)   On March 11, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 83 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 20.75 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

(vi)  On March 18, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 80 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 20 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

(vii) On June 1, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 67 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 16.75 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

(viii)  On June 3, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 63 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 15.75 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

(ix)  On July 1, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 60 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 15 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

(x)  On July 7, 2021, Coles, Naples Injury, and Palm Beach Medi-Chiro purported to provide at least 67 individual physical therapy and chiropractic services, at two different locations over 130 miles apart, and falsely contended in the resulting bills to GEICO that Coles personally performed or directly supervised every one of those treatments. What is more, those putative treatments included at least 16.75 hours of physical therapy and chiropractic services that required direct, one-on-one patient contact between the treating provider and the Insureds throughout the services.

92.    These are only representative examples. It is impossible that Coles – who was often simultaneously working or purporting to work at both Naples Injury and Palm Beach Medi-Chiro, which are over 130 miles apart, on individual dates – routinely performed or directly supervised such a massive volume of services on those dates.

37

93.     What is more, and as stated above, when interviewed by a GEICO investigator in April 2022, Coles claimed to only be present at Naples Injury once per month, and denied having any knowledge of the existence of Palm Beach Medi-Chiro.

94.     Upon information and belief, the fraudulent billing for the services that Coles, Naples Injury, and Palm Beach Medi-Chiro submitted or caused to be submitted through Naples Injury and Palm Beach Medi-Chiro to GEICO constituted only a fraction of the <u>total</u> fraudulent billing for services that Coles, Naples Injury, and Palm Beach Medi-Chiro submitted through Naples Injury and Palm Beach Medi-Chiro to <u>all</u> of the automobile insurers in the Florida automobile insurance market.

95.     It is not credible that Coles, Naples Injury, and Palm Beach Medi-Chiro only submitted fraudulent billing to GEICO, and that Coles, Naples Injury, and Palm Beach Medi-Chiro did not simultaneously bill other automobile insurers.

96.     Thus, upon information and belief, the impossible number of services that Coles purported to directly supervise or perform for GEICO Insureds at Naples Injury and Palm Beach Medi-Chiro on individual dates of service constituted only a fraction of the <u>total</u> number of services that Coles purported to directly supervise or perform at Naples Injury and Palm Beach Medi-Chiro, including for individuals insured by companies other than GEICO, on those same dates of service.

97.     In this context, Coles – who at all relevant times purported to own Naples Injury and Palm Beach Medi-Chiro – did not, and could not have, legitimately supervised the business activities of Naples Injury and Palm Beach Medi-Chiro.

98.     Had Coles actually supervised the business activities of Naples Injury and Palm Beach Medi-Chiro, he would have noted – among other things – that Naples Injury and Palm Beach Medi-Chiro routinely misrepresented, in Box 31 of the HCFA-1500 billing forms they submitted, the identity of the person who actually performed or directly supervised the underlying health care services.

99.     Coles failed to do so, because he never actually supervised the business activities of Naples Injury and Palm Beach Medi-Chiro.

**E.     The Defendants' Fraudulent Treatment and Billing Protocols**

100.    In the claims identified in Exhibits "1" - "5", almost none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced.

101.    Even so, in the claims identified in Exhibits "1" - "5", the Defendants purported to subject virtually every Insured to a medically unnecessary course of "treatment" that was provided pursuant to pre-determined, fraudulent protocols designed to maximize the billing that they could submit to insurers, including

39

GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

102.    The Defendants purported to provide their pre-determined fraudulent treatment protocols to the Insureds in the claims identified in Exhibits "1" - "5" without regard for the Insureds' individual symptoms or presentation, or – in most cases – the total absence of any actual continuing medical problems arising from any actual automobile accidents.

103.    Each step in the Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent PIP billing for each Insured.

104.    No legitimate physician, clinic, or other health care provider would permit the fraudulent treatment and billing protocols described below to proceed under his, her, or its auspices.

105.    The Defendants permitted the fraudulent treatment and billing protocols described below to proceed under their auspices because: (i) the Coles Entities were, at all relevant times, operating in violation of the Clinic Act, without legitimate oversight, clinic licenses, or medical directors who legitimately fulfilled their statutory duties as medical directors; and (ii) the Defendants sought to profit from the fraudulent billing they submitted to GEICO and other insurers.

1.    **The Fraudulent and Unlawful Charges for Examinations at the Coles Entities**

106.    As an initial step in the Defendants' fraudulent treatment and billing protocol, the Defendants purported to provide virtually every Insured in the claims identified in Exhibits "1" – "5" with an initial examination.

107.    As set forth in Exhibit "1", Orlando Injury and Coles often billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of $246.00 for each initial examination that they purported to provide.

108.    Similarly, and as set forth in Exhibit "2", St. Lucie Wellness and Coles often billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of either $210.00 or $246.00 for each initial examination that they purported to provide.

109.    Likewise, and as set forth in Exhibit "3", Visionary Health and Coles often billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of between $300.00 and $456.00 for each initial examination that they purported to provide.

110.    What is more, and as set forth in Exhibit "4", Palm Beach Medi-Chiro and Coles often billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of between $235.00 and $265.00 for each initial examination that they purported to provide.

111.    Finally, and as set forth in Exhibit "5", Naples Injury and Coles and Coles often billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of either $150.00 or $210.00 for each initial examination that they purported to provide.

112.    Pursuant to the American Medical Association's CPT Assistant, which governs reimbursement of PIP claims, at all relevant times the use of CPT code 99203 to bill for an initial patient examination represented – among other things – that: (a) the practitioner who conducted the examination spent at least 30 minutes of time performing the examination the examination; and (b) the practitioner who performed the examination engaged in legitimate "low complexity" medical decision-making in connection with the examination.

113.    In the claims for initial examinations identified in Exhibits "1" – "5", the charges for the initial examinations were fraudulent in that they misrepresented the Coles Entities' eligibility to collect PIP Benefits in the first instance.

114.    In fact, and as set forth herein, the Coles Entities never were eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, the False and Fraudulent Insurance Claims statute, the Patient Brokering Act, and/or Anti-Kickback Statute.

115.   As set forth below, the charges for the initial examinations under CPT code 99203 identified in Exhibits "1" – "5" also were fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

**a.    Misrepresentations Regarding the Severity of the Insureds' Presenting Problems During the Purported Initial Examinations**

116.   In the claims for initial examinations identified in Exhibits "1" – "5", the Coles Entities and Coles routinely misrepresented the severity of the Insureds' presenting problems.

117.   Pursuant to the American Medical Association's CPT Assistant, which governs reimbursement of PIP claims, the use of CPT code 99203 to bill for an initial examination typically requires that the Insured present with problems of moderate severity.

118.   However, to the extent that the Insureds in the claims identified in Exhibits "1" – "5" had any presenting problems at all as a result of their typically-minor automobile accidents, the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains.

119.   For instance, in most of the claims identified in Exhibits "1" – "5", the Insureds did not seek treatment at any hospital as a result of their accident, and to the limited extent that the Insureds in the claims identified in Exhibits "1" – "5" did seek treatment at a hospital following their accidents, they virtually always were

briefly observed on an outpatient basis, and then discharged with nothing more serious than a minor soft tissue diagnosis.

120.   Furthermore, in most of the claims identified in Exhibits "1" – "5", contemporaneous police reports indicated that the Insureds' vehicle were functional following the accidents, and that no one was seriously injured in their accidents, or injured at all.

121.   Even so, in the claims for initial examinations identified in Exhibits "1" – "5", the Coles Entities and Coles routinely billed for their putative examinations using CPT code 99203, and thereby falsely represented that the Insureds presented with problems of moderate severity.

122.     For example:

(i)     On February 1, 2022, an Insured named PF was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that PF's vehicle was drivable following the accident. The police report further indicated that PF was not injured and did not complain of any pain at the scene. In keeping with the fact that PF was not seriously injured, PF did not visit any hospital emergency room following the accident. To the extent that PF experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of PF on February 8, 2022, Naples Injury and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ii)    On March 9, 2022, an Insured named RJ was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that RJ's vehicle was drivable following the accident. The police report further indicated that RJ was not injured and did not complain of any pain at the scene. In keeping with the

fact that RJ was not seriously injured, RJ did not visit any hospital emergency room following the accident. To the extent that RJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of RJ on March 17, 2022, St. Lucie Wellness and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iii)   On April 8, 2022, an Insured named FC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that FC's vehicle was drivable following the accident. The police report further indicated that FC was not injured and did not complain of any pain at the scene. In keeping with the fact that FC was not seriously injured, FC did not visit any hospital emergency room following the accident. To the extent that FC experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of FC on May 4, 2022, Orlando Injury and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iv)   On October 3, 2022, an Insured named SL was involved in an automobile accident.  The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that SL's vehicle was drivable following the accident. The police report further indicated that SL was not injured and did not complain of any pain at the scene. In keeping with the fact that SL was not seriously injured, SL did not visit any hospital emergency room following the accident. To the extent that SL experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of SL on October 4, 2022, Orlando Injury and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(v)   On December 9, 2022, an Insured named EE was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that EE's vehicle was drivable following the accident. The police report further indicated that EE was not injured and did not complain of any pain at the scene. In keeping

with the fact that EE was not seriously injured, EE did not visit any hospital emergency room following the accident. To the extent that EE experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of EE on December 12, 2022, Palm Beach Medi-Chiro and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(vi)    On March 14, 2023, an Insured named JY was involved in an automobile accident. The contemporaneous police report indicated that JY was not injured and did not complain of any pain at the scene. In keeping with the fact that JY was not seriously injured, JY did not visit any hospital emergency room following the accident. To the extent that JY experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of JY on March 21, 2023, St. Lucie Wellness and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(vii)    On May 4, 2023, an Insured named DC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that DC's vehicle was drivable following the accident. The police report further indicated that DC was not injured and did not complain of any pain at the scene. In keeping with the fact that DC was not seriously injured, DC did not visit any hospital emergency room following the accident. To the extent that DC experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of DC on May 16, 2023, St. Lucie Wellness and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(viii)    On August 3, 2023, an Insured named WD was involved in an automobile accident. The contemporaneous police report indicated that WD was not injured and did not complain of any pain at the scene. In keeping with the fact that WD was not seriously injured, WD did not visit any hospital emergency room following the accident. To the extent that WD

experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of WD on September 18, 2023, Visionary Health and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ix)     On February 17, 2024, an Insured named KF was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that KF's vehicle was drivable following the accident. The police report further indicated that KF was not injured and did not complain of any pain at the scene. In keeping with the fact that KF was not seriously injured, KF did not visit any hospital emergency room following the accident. To the extent that KF experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of KF on March 25, 2024, Visionary Health and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(x)      On March 3, 2024, an Insured named LJ was involved in an automobile accident. The contemporaneous police report indicated that LJ was not injured and did not complain of any pain at the scene. In keeping with the fact that LJ was not seriously injured, LJ did not visit any hospital emergency room following the accident. To the extent that LJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of LJ on March 8, 2024, Palm Beach Medi-Chiro and Coles billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

123.    These are only representative examples. In the claims for initial examinations identified in Exhibits "1" – "5", the Coles Entities and Coles routinely falsely represented that the Insureds presented with problems of moderate severity in order to: (i) create a false basis for their charges for the examinations under CPT

code 99203, because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations involving presenting problems of low severity, minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that Defendants purported to provide the Insureds.

**b.     Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

124.   What is more, in the claims identified in Exhibits "1" – "5", the charges for the initial examinations under CPT code 99203 misrepresented and exaggerated the amount of time that the examining health care practitioner spent performing the examinations.

125.   Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for a patient examination represents that the physician or other health care practitioner who performed the underlying examination spent at least 30 minutes performing the examination.

126.   As set forth in Exhibits "1" – "5", the Coles Entities and Coles often billed for their putative initial examinations using CPT code 99203, and thereby represented that the physicians and other health care practitioners who purported to conduct the examinations spent at least 30 minutes performing the examinations.

127.   In fact, in the claims for initial examinations identified in Exhibit "1" – "5", no health care practitioner ever spent even 15 minutes time performing the examinations, much less 30 minutes.

128.   In keeping with the fact that the initial examinations in the claims identified in Exhibits "1" – "5" did not involve more than 15 minutes of time to perform, the examining health care practitioners used pre-printed forms in purporting to conduct the examinations.

129.   All that was required to complete the pre-printed forms was a brief patient interview and a perfunctory physical examination of the Insureds, using a limited range of examination parameters.

130.   These interviews and examinations did not require the health care practitioners associated with the Coles Entities to spend more than 15 minutes performing the putative initial examinations.

131.   In the claims for initial examinations that are identified in Exhibits "1" – "5", the Coles Entities and Coles routinely misrepresented the amount of time that was spent in conducting the initial examinations because lengthier examinations that are billable under CPT code 99203 are reimbursable at higher rates than examinations that take less time to perform.

c.    **Misrepresentation Regarding the Extent of the Medical Decision Making**

132.   Furthermore, and pursuant to the CPT Assistant, when the Coles Entities and Coles billed GEICO for putative initial examinations under CPT code 99203 in the claims for initial examinations identified in Exhibits "1" – "5", they falsely represented that the practitioners who purported to perform the examinations

on behalf of the Coles Entities engaged in some legitimate, low complexity medical decision-making in connection with the examinations.

133.   In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

134.   Rather, in the claims for initial examinations identified in Exhibits "1" – "5": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic tests, or other information; (ii) there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) the practitioners who purported to perform the examinations did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and instead provided a substantially similar set of pre-determined and false sprain/strain or similar soft tissue injury "diagnoses" for every Insured, regardless of their true individual circumstances or presentation.

135.   For example:

(i)    On May 14, 2021, an Insured named JB was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision. The police report further indicated that JB was not injured and did not complain of any pain at the scene. In keeping with the fact that JB was not seriously injured, JB did not visit any hospital emergency room following the accident. On May 17, 2021, a chiropractor named Mary Ann Zawada, D.C. ("Zawada") purported to conduct an initial examination of JB at

Orlando Injury. Zawada did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Zawada did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Zawada provided JB with substantially the same false list of soft tissue injury "diagnoses" that she provided virtually every other Insured. Furthermore, neither JB's presenting problems, nor the treatment plan provided to JB by Zawada, Coles, and Orlando Injury presented any risk of significant complications, morbidity, or mortality. To the contrary, JB did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by Zawada, Coles, and Orlando Injury consisted of medically unnecessary chiropractic therapy treatment, which did not pose any risk to JB if properly administered. Even so, Zawada, Coles and Orlando Injury billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Zawada engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ii)    On January 16, 2022, an Insured named CV was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that CV's vehicle was drivable following the accident. The police report further indicated that CV was not injured and did not complain of any pain at the scene. In keeping with the fact that CV was not seriously injured, CV did not visit any hospital emergency room following the accident. To the extent that CV experienced any health problems at all as a result of the accident, they were of low or minimal severity. January 27, 2022, a chiropractor named Deborah Armenti, D.C. ("Armenti") purported to conduct an initial examination of CV at Visionary Health. Armenti did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Armenti did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Armenti provided CV with substantially the same false list of soft tissue injury "diagnoses" that she provided virtually every other Insured. Furthermore, neither CV's presenting problems, nor the treatment plan provided to CV by Armenti, Coles, and Visionary Health presented any risk of significant complications, morbidity, or mortality. To the contrary, CV did not need any extensive

treatment at all as a result of the accident, and the treatment plan provided by Armenti, Coles, and Visionary Health consisted of medically unnecessary chiropractic treatment, which did not pose any risk to CV if properly administered. Even so, Armenti, Coles, and Visionary Health billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Armenti engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iii)   On February 1, 2022, an Insured named PF was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that PF's vehicle was drivable following the accident. The police report further indicated that PF was not injured and did not complain of any pain at the scene. In keeping with the fact that PF was not seriously injured, PF did not visit any hospital emergency room following the accident. To the extent that PF experienced any health problems at all as a result of the accident, they were of low or minimal severity. On February 8, 2022, Coles purported to conduct an initial examination of PF at Naples Injury. Coles did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Coles did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Coles provided PF with substantially the same false list of soft tissue injury "diagnoses" that he provided virtually every other Insured. Furthermore, neither PF's presenting problems, nor the treatment plan provided to PF by Coles and Naples Injury presented any risk of significant complications, morbidity, or mortality. To the contrary, PF did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by Coles and Naples Injury consisted of medically unnecessary chiropractic treatment, which did not pose any risk to PF if properly administered. Even so, Coles and Naples Injury billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Coles engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iv)   On April 8, 2022, an Insured named FC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that FC's vehicle was

drivable following the accident. The police report further indicated that FC was not injured and did not complain of any pain at the scene. In keeping with the fact that FC was not seriously injured, FC did not visit any hospital emergency room following the accident. To the extent that FC experienced any health problems at all as a result of the accident, they were of low or minimal severity. On May 4, 2022, Zawada purported to conduct an initial examination of FC at Orlando Injury. Zawada did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Zawada did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Zawada provided FC with substantially the same false list of soft tissue injury "diagnoses" that she provided virtually every other Insured. Furthermore, neither FC's presenting problems, nor the treatment plan provided to FC by Zawada, Coles, and Orlando Injury presented any risk of significant complications, morbidity, or mortality. To the contrary, FC did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by Zawada, Coles, and Orlando Injury consisted of medically unnecessary chiropractic treatment, which did not pose any risk to FC if properly administered. Even so, Zawada, Coles and Orlando Injury billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Zawada engaged in some legitimate, low complexity medical decision-making during the purported examination.

(v)     On July 10, 2022, an Insured named EC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision. The police report further indicated that EC was not injured and did not complain of any pain at the scene. In keeping with the fact that EC was not seriously injured, EC did not visit any hospital emergency room following the accident. On July 12, 2022, a chiropractor named Christina Sajgo, D.C. ("Sajgo") purported to conduct an initial examination of EC at Orlando Injury. Sajgo did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Sajgo did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Sajgo provided EC with substantially the same false list of soft tissue injury "diagnoses" that she provided virtually

53

every other Insured. Furthermore, neither EC's presenting problems, nor the treatment plan provided to EC by Sajgo, Coles, and Orlando Injury presented any risk of significant complications, morbidity, or mortality. To the contrary, EC did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by Sajgo, Coles, and Orlando Injury consisted of medically unnecessary chiropractic therapy treatment, which did not pose any risk to EC if properly administered. Even so, Sajgo, Coles and Orlando Injury billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Sajgo engaged in some legitimate, low complexity medical decision-making during the purported examination.

(vi)   On December 9, 2022, an Insured named EE was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that EE's vehicle was drivable following the accident. The police report further indicated that EE was not injured and did not complain of any pain at the scene. In keeping with the fact that EE was not seriously injured, EE did not visit any hospital emergency room following the accident. To the extent that EE experienced any health problems at all as a result of the accident, they were of low or minimal severity. On December 12, 2022, a chiropractor named Douglas Gagnon, Jr., D.C. ("Gagnon Jr.") purported to conduct an initial examination of EE at Palm Beach Medi-Chiro. Gagnon, Jr. did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Gagnon, Jr. did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Gagnon, Jr. provided EE with substantially the same false list of soft tissue injury "diagnoses" that he provided virtually every other Insured. Furthermore, neither EE's presenting problems, nor the treatment plan provided to EE by Gagnon, Jr., Coles, and Palm Beach Medi-Chiro presented any risk of significant complications, morbidity, or mortality. To the contrary, EE did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by Gagnon, Jr., Coles, and Palm Beach Medi-Chiro consisted of medically unnecessary chiropractic treatment, which did not pose any risk to EE if properly administered. Even so, Gagnon, Jr., Coles, and Palm Beach Medi-Chiro billed GEICO for the initial examination using CPT code 99203, and thereby falsely

represented that Gagnon, Jr. engaged in some legitimate, low complexity medical decision-making during the purported examination.

(vii)    On April 7, 2023, an Insured named FD was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that FD's vehicle was drivable following the accident. The police report further indicated that FD was not injured and did not complain of any pain at the scene. In keeping with the fact that FD was not seriously injured, FD did not visit any hospital emergency room following the accident. To the extent that FD experienced any health problems at all as a result of the accident, they were of low or minimal severity. On April 10, 2023, a chiropractor named Marc Schweitzer, D.C. ("Schweitzer") purported to conduct an initial examination of FD at St. Lucie Wellness. Schweitzer did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Schweitzer did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Schweitzer provided FD with substantially the same false list of soft tissue injury "diagnoses" that he provided virtually every other Insured. Furthermore, neither FD's presenting problems, nor the treatment plan provided to FD by Schweitzer and St. Lucie Wellness presented any risk of significant complications, morbidity, or mortality. To the contrary, FD did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by Schweitzer, Coles, and St. Lucie Wellness consisted of medically unnecessary chiropractic treatment, which did not pose any risk to FD if properly administered. Even so, Schweitzer, Coles, and St. Lucie Wellness billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Schweitzer engaged in some legitimate, low complexity medical decision-making during the purported examination.

(viii)    On August 16, 2023, an Insured named ED was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that ED's vehicle was drivable following the accident. The police report further indicated that ED was not injured and did not complain of any pain at the scene. In keeping with the fact that ED was not seriously injured,

55

ED did not visit any hospital emergency room following the accident. To the extent that ED experienced any health problems at all as a result of the accident, they were of low or minimal severity. On August 23, 2023, Schweitzer purported to conduct an initial examination of ED at St. Lucie Wellness. Schweitzer did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Schweitzer did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Schweitzer provided ED with substantially the same false list of soft tissue injury "diagnoses" that he provided virtually every other Insured. Furthermore, neither ED's presenting problems, nor the treatment plan provided to ED by Schweitzer, Coles, and St. Lucie Wellness presented any risk of significant complications, morbidity, or mortality. To the contrary, ED did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by Schweitzer, Coles, and St. Lucie Wellness consisted of medically unnecessary chiropractic treatment, which did not pose any risk to ED if properly administered. Even so, Schweitzer, Coles, and St. Lucie Wellness billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Schweitzer engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ix)    On February 17, 2024, an Insured named KF was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that KF's vehicle was drivable following the accident. The police report further indicated that KF was not injured and did not complain of any pain at the scene. In keeping with the fact that KF was not seriously injured, KF did not visit any hospital emergency room following the accident. To the extent that KF experienced any health problems at all as a result of the accident, they were of low or minimal severity. On March 25, 2024, a chiropractor named Douglas Gagnon, D.C. ("Gagnon") purported to conduct an initial examination of KF at Visionary Health. Gagnon did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Gagnon did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Gagnon provided KF with substantially

the same false list of soft tissue injury "diagnoses" that he provided virtually every other Insured. Furthermore, neither KF's presenting problems, nor the treatment plan provided to KF by Gagnon, Coles, and Visionary Health presented any risk of significant complications, morbidity, or mortality. To the contrary, KF did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by Gagnon, Coles, and Visionary Health consisted of medically unnecessary chiropractic treatment, which did not pose any risk to KF if properly administered. Even so, Gagnon, Coles, and Visionary Health billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Gagnon engaged in some legitimate, low complexity medical decision-making during the purported examination.

(x)     On March 3, 2024, an Insured named MJ was involved in an automobile accident. The contemporaneous police report indicated that MJ was not injured and did not complain of any pain at the scene. In keeping with the fact that MJ was not seriously injured, MJ did not visit any hospital emergency room following the accident. To the extent that MJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. On March 8, 2024, a chiropractor named Rosemary Pereira, D.C. ("Pereira") purported to conduct an initial examination of MJ at Palm Beach Medi-Chiro. Pereira did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Pereira did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Pereira provided MJ with substantially the same false list of soft tissue injury "diagnoses" that she provided virtually every other Insured. Furthermore, neither MJ's presenting problems, nor the treatment plan provided to MJ by Pereira, Coles, and Palm Beach Medi-Chiro presented any risk of significant complications, morbidity, or mortality. To the contrary, MJ did not need any extensive treatment at all as a result of the accident, and the treatment plan provided by Pereira, Coles, and Palm Beach Medi-Chiro consisted of medically unnecessary chiropractic treatment, which did not pose any risk to MJ if properly administered. Even so, Pereira, Coles, and Palm Beach Medi-Chiro billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Pereira engaged in

some legitimate, low complexity medical decision-making during the purported examination.

136.    These are only representative examples. In the claims identified in Exhibits "1" – "5", the Coles Entities and Coles routinely falsely represented that the purported examinations involved legitimate low-complexity decision-making, when in fact they did not involve any legitimate medical decision-making at all.

137.    In a legitimate clinic setting, when a patient presents with a soft tissue injury such as a sprain or strain arising from an automobile accident, the initial standard of care is conservative treatment comprised of rest, ice, compression, and – if applicable – elevation of the affected body part.

138.    Even so, in the claims identified in Exhibits "1" – "5", the Coles Entities and Coles routinely caused Insureds to immediately begin a course of medically unnecessary chiropractic and physical therapy often within days of their accidents, before the Insureds had first tried a more conservative course of treatment.

139.    The Coles Entities and Coles routinely caused Insureds to immediately begin a course of chiropractic and physical therapy often within days of their accidents, or even on the same day of their accidents, because their putative initial examinations involved no legitimate medical decision-making whatsoever, and had pre-determined outcomes.

140.    There are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

141.   An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured and in a given automobile accident.

142.   As set forth herein, in the claims identified in Exhibits "1" – "5", virtually all of the Insureds that the Coles Entities and Coles purported to treat were involved in relatively minor accidents.

143.   It is improbable that any two or more Insureds involved in any one of the minor automobile accidents in the claims identified in Exhibits "1" – "5" would suffer substantially similar injuries as a result of their accidents, or require a substantially similar course of treatment.

144.   It is even more improbable – to the point of impossibility – that this kind of pattern would recur with great frequency within the cohort of patients treating at individual health care clinics such as the Coles Entities, with numerous instances in which two or more patients who had been involved in the same accident supposedly presented with substantially similar symptoms warranting substantially similar diagnoses and treatment.

145.   Even so, in keeping with the fact that the Coles Entities and Coles' putative "diagnoses" were pre-determined and false, the Coles Entities and Coles frequently purported to provide examinations, on or about the same date, to two or more Insureds who had been involved in the same underlying accident, and at the

conclusion of the examinations, caused the Insureds to be issued substantially similar, false "diagnoses", and to be recommended substantially similar courses of medically unnecessary "treatment", despite the fact that they were differently situated.

146.    For example:

(i)    On May 14, 2021, <u>four</u> Insureds – EC, OE, CB, and JB – were involved in the same automobile accident. Thereafter – incredibly – all four Insureds presented at Orlando Injury for initial examinations by Zawada on the <u>exact same date</u>, May 17, 2021. EC, OE, CB, and JB were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EC, OE, CB, and JB suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Orlando Injury and Zawada provided EC, OE, CB, and JB with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all four of them.

(ii)    On May 15, 2021, two Insureds – ID and AD – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Palm Beach Medi-Chiro for initial examinations by Coles on the <u>exact same date</u>, May 25, 2021. ID and AD were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that ID and AD suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Palm Beach Medi-Chiro and Coles provided ID and AD with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(iii)    On August 17, 2021, two Insureds – NV and TV – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Orlando Injury for initial examinations by Sajgo on the <u>exact same date</u>, August 26, 2021. NV and TV were different ages, in

different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that NV and TV suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Orlando Injury and Sajdo provided NV and TV with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(iv)    On October 27, 2021, <u>four</u> Insureds – MC, JC, LC, and PC – were involved in the same automobile accident. Thereafter – incredibly – all four Insureds presented at St. Lucie Wellness for initial examinations by Schweitzer on the <u>exact same date</u>, October 28, 2021. MC, JC, LC, and PC were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MC, JC, LC, and PC suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, St. Lucie Wellness and Schweitzer provided MC, JC, LC, and PC with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all four of them.

(v)    On November 13, 2021, two Insureds – JV and BR – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Palm Beach Medi-Chiro for initial examinations by Gagnon on the <u>exact same date</u>, November 15, 2021. JV and BR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JV and BR suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Palm Beach Medi-Chiro and Gagnon provided JV and BR with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(vi)    On July 10, 2022, <u>three</u> Insureds – EC, WS, and RD – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at Orlando Injury for initial examinations by Sajdo on the <u>exact same date</u>, July 12, 2022. EC, WS, and RD were different

ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EC, WS, and RD suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Orlando Injury and Sajdo provided EC, WS, and RD with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(vii)    On July 20, 2022, two Insureds – EG and ME – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Visionary Health for initial examinations by Gagnon on the <u>exact same date</u>, July 25, 2022. EG and ME were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that EG and ME suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Visionary Health and Gagnon provided EG and ME with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(viii)    On August 17, 2022, <u>three</u> Insureds – JL, RJ, and RL – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at St. Lucie Wellness for initial examinations by Schweitzer on the <u>exact same date</u>, August 23, 2022. JL, RJ, and RL were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JL, RJ, and RL suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, St. Lucie Wellness and Schweitzer provided JL, RJ, and RL with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all three of them.

(ix)    On February 20, 2023, two Insureds – MG and EA – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Visionary Health for initial examinations by Gagnon on the <u>exact same date</u>, February 21, 2023. MG and EA were different ages, in different physical conditions, located in different positions in

the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MG and EA suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Visionary Health and Gagnon provided MG and EA with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them.

(x)    On March 23, 2023, three Insureds – DD, BB, and MF – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at Palm Beach Medi-Chiro for initial examinations by Gagnon on the exact same date, March 24, 2023. DD, BB, and MF were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that DD, BB, and MF suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Palm Beach Medi-Chiro and Gagnon provided DD, BB, and MF with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all three of them.

147.    These are only representative examples. In the claims for initial examinations identified in Exhibits "1" – "5", the Coles Entities and Coles routinely falsely represented that the initial examinations involved medical decision-making of low complexity in order to provide a false basis to bill for the initial examinations under CPT code 99203, because CPT code 99203 are reimbursable at higher rates than examinations that do not require any complex medical decision-making at all.

148.    In actuality, the initial examinations did not involve any legitimate medical decision-making at all, because the purported "results" of the examinations

were pre-determined, falsified, and designed to provide a false justification for the laundry-list of other Fraudulent Services that Defendants purported to provide.

149.   In the claims for initial examinations identified in Exhibits "1" – "5", the Coles Entities and Coles routinely fraudulently misrepresented that the examinations were lawfully provided and eligible for PIP reimbursement, when in fact they were neither lawfully provided nor reimbursable because:

> (i)    the putative examinations were illusory, with outcomes that were pre-determined to result in substantially similar, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;
>
> (ii)   the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and
>
> (iii)  the Coles Entities and Coles never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they operated in violation of Florida law.

## 2.    The Fraudulent and Unlawful Charges for Physical Therapy and Chiropractic Treatment at the Coles Entities

150.   In addition to their other Fraudulent Services, Coles and the Coles Entities virtually always purported to subject each of the Insureds in the claims identified in Exhibits "1" – "5" to weeks or even months of medically unnecessary physical therapy and chiropractic treatment.

151.   As identified in Exhibit "1", Orlando Injury and Coles purported to subject virtually every Insured to the same medically unnecessary physical therapy

and chiropractic treatment and billed GEICO for the purported services under CPT codes 97110, 97012, 97112, 98941, 97010, and 97140.

152.   As identified in Exhibit "2", St. Lucie Wellness and Coles purported to subject virtually every Insured to the same medically unnecessary physical therapy and chiropractic treatment and billed GEICO for the purported services under CPT codes 98941, 97110, 97012, 97035, and 97010

153.   As identified in Exhibit "3", Visionary Health and Coles purported to subject virtually every Insured to the same medically unnecessary physical therapy and chiropractic treatment and billed GEICO for the purported services under CPT codes 98941, 97110, 97012, 97112, and 97010.

154.   As identified in Exhibit "4", Palm Beach Medi-Chiro and Coles purported to subject virtually every Insured to the same medically unnecessary physical therapy and chiropractic treatment and billed GEICO for the purported services under CPT codes 97010, 97112, 97110, 97239, and 97012.

155.   As identified in Exhibit "5", Naples Injury and Coles purported to subject virtually every Insured to the same medically unnecessary physical therapy and chiropractic treatment and billed GEICO for the purported services under CPT codes 98941, 97110, 97012, 97530, and 97039.

156.   In the claims for physical therapy and chiropractic services identified in Exhibits "1" – "5" the charges for the chiropractic and physical therapy services

were fraudulent in that they misrepresented the Coles Entities' eligibility to collect PIP Benefits in the first instance.

157.   In fact, and as set forth above, the Coles Entities never were eligible to collect PIP Benefits, because of their fraudulent and unlawful activities.

158.   What is more, in a legitimate clinical setting, the individual chiropractic and physical therapy services that are provided to an individual patient should be tailored to that patient's individual circumstances and presentation.

159.   In keeping with the fact that the purported chiropractic and physical therapy services that were billed through the Coles Entities to GEICO were not medically necessary, the Coles Entities and Coles did not tailor the chiropractic and physical therapy services they purported to provide to each Insured's individual circumstances and presentation.

160.   There are a large number of individual types of chiropractic and physical therapy services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

161.   However, the Coles Entities and Coles routinely purported to provide the same handful of chiropractic and physical therapy "treatments" to virtually every Insured in the claims identified in Exhibits "1" – "5" on substantially the same schedule, without regard for the Insureds' individual circumstances.

162.    Specifically, the Coles Entities and Coles purported to provide the majority of Insureds in the claims identified in Exhibits "1" – "5" with substantially the same chiropractic and physical therapy services. This, despite the fact that the Insureds were differently situated, and could not possibly all have required a substantially-similar course of treatment.

## III.    The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO

163.    To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of bills and treatment reports through the Coles Entities to GEICO, containing thousands of individual charges, seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment.

164.    The claims that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following, material respects:

(i)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Coles Entities were in compliance with Florida law and therefore were eligible to collect PIP Benefits in the first instance, when in fact they were not.

(ii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement. In fact, the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement.

(iii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed solely to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv)    The HCFA-1500 forms reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

## IV.    The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

165.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO. Even so, the Defendants knowingly misrepresented and concealed facts related to the Coles Entities in an effort to prevent discovery that the Defendants operated in pervasive violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, the False and Fraudulent Insurance Claims Statute, and to prevent discovery that the Fraudulent Services were medically unnecessary and, in many cases, illusory, and that the billing for the Fraudulent Services misrepresented the identities of the actual treating practitioners.

166.    GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to

GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $2,000,000.00.

167.    GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it commenced this action.

### FIRST CAUSE OF ACTION
**Against Orlando Injury**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

168.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

169.    There is an actual case in controversy between GEICO and Orlando Injury regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

170.    Orlando Injury has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of Florida law.

171.    Orlando Injury has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

172.    Orlando Injury has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically

necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

173.    Orlando Injury has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

174.    Orlando Injury has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

175.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Orlando Injury has no right to receive payment for any pending bills submitted to GEICO.

## SECOND CAUSE OF ACTION
### Against Coles
### (Violation of RICO, 18 U.S.C. § 1962(c))

176.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

177.    Orlando Injury is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

178.  Coles knowingly has conducted and/or participated, directly or indirectly, in the conduct of Orlando Injury's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that Orlando Injury was not eligible to receive under the No-Fault Law because: (i) Orlando Injury unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance;  and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

179.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

180.   Orlando Injury's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Coles operated Orlando Injury, inasmuch as Orlando Injury was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Orlando Injury to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Orlando Injury to the present day.

181.   Orlando Injury is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Orlando Injury in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

182.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $170,000.00 pursuant to the fraudulent bills submitted through Orlando Injury.

183.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964, and any other relief the Court deems just and proper.

## THIRD CAUSE OF ACTION
### Against Orlando Injury and Coles
### (Under Fla. Stat. 501.201 et. seq.)

184.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

185.   Orlando Injury and Coles are actively engaged in trade and commerce in the State of Florida.

186.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

187.   Orlando Injury and Coles engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

188.   The bills and supporting documents submitted by Orlando Injury to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Orlando Injury's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

189.   Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of Orlando Injury and Coles has been materially injurious to GEICO and its Insureds.

190.  The conduct of Orlando Injury and Coles was the actual and proximate cause of the damages sustained by GEICO.

191.  Orlando Injury and Coles' unfair and deceptive acts have caused GEICO to sustain damages of at least $170,000.00.

192.  By reason of Orlando Injury and Coles' conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

## FOURTH CAUSE OF ACTION
### Against Orlando Injury and Coles
### (Common Law Fraud)

193.  GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

194.  Orlando Injury and Coles intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Orlando Injury for the Fraudulent Services.

195.  The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Orlando Injury was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully

provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

196.    Orlando Injury and Coles intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Orlando Injury that were not reimbursable.

197.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $170,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by Orlando Injury and Coles through Orlando Injury.

198.    Orlando Injury and Coles' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

199.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION
**Against Orlando Injury and Coles**
**(Unjust Enrichment)**

200.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

201.   As set forth above, Orlando Injury and Coles have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

202.   When GEICO paid the bills and charges submitted or caused to be submitted by Orlando Injury and Coles through Orlando Injury, it reasonably believed that it was legally obligated to make such payments based on Orlando Injury and Coles' improper, unlawful, and/or unjust acts.

203.   Orlando Injury and Coles have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Orlando Injury and Coles voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

204.   Orlando Injury and Coles' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

205.   By reason of the above, Orlando Injury and Coles have been unjustly enriched in an amount to be determined at trial, but in no event less than $170,000.00.

## SIXTH CAUSE OF ACTION
### Against St. Lucie Wellness
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

206.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

207.   There is an actual case in controversy between GEICO and St. Lucie Wellness regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

208.   St. Lucie Wellness has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of Florida law.

209.   St. Lucie Wellness has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

210.   St. Lucie Wellness has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

211.   St. Lucie Wellness has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

212.   St. Lucie Wellness has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

213.   Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that St. Lucie Wellness has no right to receive payment for any pending bills submitted to GEICO.

<u>SEVENTH CAUSE OF ACTION</u>
**Against Coles**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

214.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

215.   St. Lucie Wellness is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

216.   Coles knowingly has conducted and/or participated, directly or indirectly, in the conduct of St. Lucie Wellness' affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or

cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that St. Lucie Wellness was not eligible to receive under the No-Fault Law because: (i) St. Lucie Wellness unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

217.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

218.   St. Lucie Wellness' business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Coles operated St. Lucie Wellness, inasmuch as St. Lucie Wellness was not engaged in a legitimate health

care practice, and acts of mail fraud therefore were essential in order for St. Lucie Wellness to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through St. Lucie Wellness to the present day.

219.   St. Lucie Wellness is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by St. Lucie Wellness in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

220.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $360,000.00 pursuant to the fraudulent bills submitted through St. Lucie Wellness.

221.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**Against Coles**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

222.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

223.    St. Lucie Wellness is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

224.    Coles is employed by or associated with the St. Lucie Wellness enterprise.

225.    Coles, knowingly agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of St. Lucie Wellness' affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that St. Lucie Wellness was not eligible to receive under the No-Fault Law because: (i) St. Lucie Wellness unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of

services that purportedly were provided in order to inflate the charges submitted to GEICO.

226.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

227.    Coles knew of, agreed to, and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

228.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $360,000.00 pursuant to the fraudulent bills submitted through the St. Lucie Wellness enterprise.

229.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## NINTH CAUSE OF ACTION
### Against St. Lucie Wellness and Coles
### (Under Fla. Stat. 501.201 et. seq.)

230.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

231.  St. Lucie Wellness and Coles are actively engaged in trade and commerce in the State of Florida.

232.  GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

233.  St. Lucie Wellness and Coles engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

234.  The bills and supporting documents submitted by St. Lucie Wellness and Coles to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) St. Lucie Wellness' eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

235.  Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of St. Lucie Wellness and Coles has been materially injurious to GEICO and its Insureds.

236.  The conduct of St. Lucie Wellness and Coles was the actual and proximate cause of the damages sustained by GEICO.

237.  St. Lucie Wellness and Coles' unfair and deceptive acts have caused GEICO to sustain damages of at least $360,000.00.

238.   By reason of St. Lucie Wellness and Coles' conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**TENTH CAUSE OF ACTION**
**Against St. Lucie Wellness and Coles**
**(Common Law Fraud)**

239.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

240.   St. Lucie Wellness and Coles intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through St. Lucie Wellness for the Fraudulent Services.

241.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that St. Lucie Wellness was in compliance with Florida law and eligible to collect PIP Benefits in the first instance, when in fact St. Lucie Wellness was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided or billed to GEICO, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims,

the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

242. St. Lucie Wellness and Coles intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through St. Lucie Wellness that were not reimbursable.

243. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $360,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by St. Lucie Wellness and Coles through St. Lucie Wellness.

244. St. Lucie Wellness and Coles' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

245. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
### Against St. Lucie Wellness and Coles
### (Unjust Enrichment)

246.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

247.    As set forth above, St. Lucie Wellness and Coles have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

248.    When GEICO paid the bills and charges submitted or caused to be submitted by St. Lucie Wellness and Coles through St. Lucie Wellness, it reasonably believed that it was legally obligated to make such payments based on St. Lucie Wellness and Coles' improper, unlawful, and/or unjust acts.

249.    St. Lucie Wellness and Coles have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that St. Lucie Wellness and Coles voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

250.    St. Lucie Wellness and Coles' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

251.    By reason of the above, St. Lucie Wellness and Coles have been unjustly enriched in an amount to be determined at trial, but in no event less than $360,000.00.

# TWELFTH CAUSE OF ACTION
## Against Visionary Health
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

252.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

253.    There is an actual case in controversy between GEICO and Visionary Health regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

254.    Visionary Health has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of Florida law.

255.    Visionary Health has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

256.    Visionary Health has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

257.    Visionary Health has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

258.    Visionary Health has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

259.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Visionary Health has no right to receive payment for any pending bills submitted to GEICO.

## THIRTEENTH CAUSE OF ACTION
### Against Coles
### (Violation of RICO, 18 U.S.C. § 1962(c))

260.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

261.    Visionary Health is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

262.    Coles knowingly has conducted and/or participated, directly or indirectly, in the conduct of Visionary Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or

cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Visionary Health was not eligible to receive under the No-Fault Law because: (i) Visionary Health unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance..

263.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3".

264.    Visionary Health's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Coles operated Visionary Health, inasmuch as Visionary Health was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Visionary Health to function. Furthermore, the intricate planning required to carry out and conceal the

predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Visionary Health to the present day.

265.    Visionary Health is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Visionary Health in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

266.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $190,000.00 pursuant to the fraudulent bills submitted through Visionary Health.

267.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## FOURTEENTH CAUSE OF ACTION
### Against Coles
### (Violation of RICO, 18 U.S.C. § 1962(d))

268.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

269.    Visionary Health is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

270.   Coles is employed by or associated with the Visionary Health enterprise.

271.   Coles knowingly agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of Visionary Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Visionary Health was not eligible to receive under the No-Fault Law because: (i) Visionary Health unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

272.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering

activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3". Each such mailing was made in furtherance of the mail fraud scheme.

273.    Coles knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

274.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $190,000.00 pursuant to the fraudulent bills submitted through the Visionary Health enterprise.

275.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FIFTEENTH CAUSE OF ACTION**
**Against Visionary Health and Coles**
**(Under Fla. Stat. 501.201 et. seq.)**

276.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

277.    Visionary Health and Coles are actively engaged in trade and commerce in the State of Florida.

278.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

279.    Visionary Health and Coles engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

280.    The bills and supporting documents submitted by Visionary Health and Coles to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Visionary Health's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance..

281.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Visionary Health and Coles has been materially injurious to GEICO and its Insureds.

282.    The conduct of Visionary Health and Coles was the actual and proximate cause of the damages sustained by GEICO.

283.    Visionary Health and Coles' unfair and deceptive acts have caused GEICO to sustain damages of at least $190,000.00.

284.    By reason of Visionary Health and Coles' conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

## SIXTEENTH CAUSE OF ACTION
### Against Visionary Health and Coles
### (Common Law Fraud)

285.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

286.   Visionary Health and Coles intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Visionary Health for the Fraudulent Services.

287.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Visionary Health was in compliance with Florida law and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

288.    Visionary Health and Coles intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Visionary Health that were not reimbursable.

289.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $190,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by Visionary Health and Coles through Visionary Health.

290.    Visionary Health and Coles' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

291.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### SEVENTEENTH CAUSE OF ACTION
**Against Visionary Health and Coles**
**(Unjust Enrichment)**

292.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

293.   As set forth above, Visionary Health and Coles have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

294.   When GEICO paid the bills and charges submitted or caused to be submitted by Visionary Health and Coles through Visionary Health, it reasonably believed that it was legally obligated to make such payments based on Visionary Health and Coles' improper, unlawful, and/or unjust acts.

295.   Visionary Health and Coles have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Visionary Health and Coles voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

296.   Visionary Health and Coles' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

297.   By reason of the above, Visionary Health and Coles have been unjustly enriched in an amount to be determined at trial, but in no event less than $190,000.00.

<strong><u>EIGHTEENTH CAUSE OF ACTION</u><br>Against Palm Beach Medi-Chiro<br>(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)</strong>

298.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

299.   There is an actual case in controversy between GEICO and Palm Beach Medi-Chiro regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

300.   Palm Beach Medi-Chiro has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of Florida law.

301.   Palm Beach Medi-Chiro has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

302.   Palm Beach Medi-Chiro has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

303.   Palm Beach Medi-Chiro has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

304.   Palm Beach Medi-Chiro has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying

Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

305.   Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Palm Beach Medi-Chiro has no right to receive payment for any pending bills submitted to GEICO.

## NINETEENTH CAUSE OF ACTION
### Against Coles
### (Violation of RICO, 18 U.S.C. § 1962(c))

306.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

307.   Palm Beach Medi-Chiro is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

308.   Coles knowingly has conducted and/or participated, directly or indirectly, in the conduct of Palm Beach Medi-Chiro's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that Palm Beach Medi-Chiro was not eligible to receive under the No-Fault Law because: (i) Palm Beach Medi-Chiro unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not

lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

309.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4".

310.   Palm Beach Medi-Chiro's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Coles operated Palm Beach Medi-Chiro, inasmuch as Palm Beach Medi-Chiro was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Palm Beach Medi-Chiro to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of

continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Palm Beach Medi-Chiro to the present day.

311.   Palm Beach Medi-Chiro is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Palm Beach Medi-Chiro in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

312.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $490,000.00 pursuant to the fraudulent bills submitted through Palm Beach Medi-Chiro.

313.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## TWENTIETH CAUSE OF ACTION
### Against Coles
### (Violation of RICO, 18 U.S.C. § 1962(d))

314.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

315.   Palm Beach Medi-Chiro is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

316.   Coles is employed by or associated with the Palm Beach Medi-Chiro enterprise.

317.   Coles knowingly agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of Palm Beach Medi-Chiro's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that Palm Beach Medi-Chiro was not eligible to receive under the No-Fault Law because: (i) Palm Beach Medi-Chiro unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and

exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

318.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4". Each such mailing was made in furtherance of the mail fraud scheme.

319.    Coles knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

320.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $490,000.00 pursuant to the fraudulent bills submitted through the Palm Beach Medi-Chiro enterprise.

321.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTY-FIRST CAUSE OF ACTION
### Against Palm Beach Medi-Chiro and Coles
### (Under Fla. Stat. 501.201 et. seq.)

322.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

323.   Palm Beach Medi-Chiro and Coles are actively engaged in trade and commerce in the State of Florida.

324.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

325.   Palm Beach Medi-Chiro and Coles engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

326.   The bills and supporting documents submitted by Palm Beach Medi-Chiro and Coles to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Palm Beach Medi-Chiro's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

327.   Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Palm Beach Medi-Chiro and Coles has been materially injurious to GEICO and its Insureds.

328.   The conduct of Palm Beach Medi-Chiro and Coles was the actual and proximate cause of the damages sustained by GEICO.

329.   Palm Beach Medi-Chiro and Coles' unfair and deceptive acts have caused GEICO to sustain damages of at least $490,000.00.

330.   By reason of Palm Beach Medi-Chiro and Coles' conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

## TWENTY-SECOND CAUSE OF ACTION
### Against Palm Beach Medi-Chiro and Coles
### (Common Law Fraud)

331.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

332.   Palm Beach Medi-Chiro and Coles intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Palm Beach Medi-Chiro for the Fraudulent Services.

333.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Palm Beach Medi-Chiro was in compliance with Florida law and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the

representation that the Fraudulent Services were medically necessary, when in fact
they were not medically necessary; and (iv) in many claims, the representation that
the Fraudulent Services actually were performed, when in many cases they were not
actually performed.

334.  Palm Beach Medi-Chiro and Coles intentionally made the above-
described false and fraudulent statements and concealed material facts in a
calculated effort to induce GEICO to pay charges submitted through Palm Beach
Medi-Chiro that were not reimbursable.

335.  GEICO justifiably relied on these false and fraudulent representations
and acts of fraudulent concealment, and as a proximate result has been injured in its
business and property by reason of the above-described conduct in that it has paid at
least $490,000.00 pursuant to the fraudulent bills that were submitted or caused to
be submitted by Palm Beach Medi-Chiro and Coles through Palm Beach Medi-
Chiro.

336.  Palm Beach Medi-Chiro and Coles' extensive fraudulent conduct
demonstrates a high degree of moral turpitude and wanton dishonesty that entitles
GEICO to recover punitive damages.

337.  Accordingly, by virtue of the foregoing, GEICO is entitled to
compensatory and punitive damages, together with interest and costs, and any other
relief the Court deems just and proper.

## TWENTY-THIRD CAUSE OF ACTION
### Against Palm Beach Medi-Chiro and Coles
### (Unjust Enrichment)

338.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

339.   As set forth above, Palm Beach Medi-Chiro and Coles have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

340.   When GEICO paid the bills and charges submitted or caused to be submitted by Palm Beach Medi-Chiro and Coles through Palm Beach Medi-Chiro, it reasonably believed that it was legally obligated to make such payments based on Palm Beach Medi-Chiro and Coles' improper, unlawful, and/or unjust acts.

341.   Palm Beach Medi-Chiro and Coles have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Palm Beach Medi-Chiro and Coles voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

342.   Palm Beach Medi-Chiro and Coles' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

343.   By reason of the above, Palm Beach Medi-Chiro and Coles have been unjustly enriched in an amount to be determined at trial, but in no event less than $490,000.00.

## TWENTY-FOURTH CAUSE OF ACTION
### Against Naples Injury
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

344.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

345.   There is an actual case in controversy between GEICO and Naples Injury regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

346.   Naples Injury has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of Florida law.

347.   Naples Injury has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

348.   Naples Injury has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

349.   Naples Injury has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

350.   Naples Injury has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

351.   Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Naples Injury has no right to receive payment for any pending bills submitted to GEICO.

**TWENTY-FIFTH CAUSE OF ACTION**
**Against Coles**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

352.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

353.   Naples Injury is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

354.  Coles knowingly has conducted and/or participated, directly or indirectly, in the conduct of Naples Injury's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be

submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Naples Injury was not eligible to receive under the No-Fault Law because: (i) Naples Injury unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

355.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "5".

356.   Naples Injury's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Coles operated Naples Injury, inasmuch as Naples Injury was not engaged in a legitimate health care

practice, and acts of mail fraud therefore were essential in order for Naples Injury to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Naples Injury to the present day.

357.   Naples Injury is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Naples Injury in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

358.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $830,000.00 pursuant to the fraudulent bills submitted through Naples Injury.

359.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## TWENTY-SIXTH CAUSE OF ACTION
### Against Coles
### (Violation of RICO, 18 U.S.C. § 1962(d))

360.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

361.   Naples Injury is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

362.   Coles is employed by or associated with the Naples Injury enterprise.

363.   Coles knowingly agreed, combined, and conspired to conduct and/or participate, directly or indirectly, in the conduct of Naples Injury's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Naples Injury was not eligible to receive under the No-Fault Law because: (i) Naples Injury unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

364.   A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "5". Each such mailing was made in furtherance of the mail fraud scheme.

365.   Coles knew of, agreed to, and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

366.   GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $830,000.00 pursuant to the fraudulent bills submitted through the Naples Injury enterprise.

367.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTY-SEVENTH CAUSE OF ACTION
### Against Naples Injury and Coles
### (Under Fla. Stat. 501.201 <u>et</u>. <u>seq</u>.)

368.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

369.   Naples Injury and Coles are actively engaged in trade and commerce in the State of Florida.

370.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

371.   Naples Injury and Coles engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

372.   The bills and supporting documents submitted by Naples Injury and Coles to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Naples Injury's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

373.   Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Naples Injury and Coles has been materially injurious to GEICO and its Insureds.

374.   The conduct of Naples Injury and Coles was the actual and proximate cause of the damages sustained by GEICO.

375.   Naples Injury and Coles' unfair and deceptive acts have caused GEICO to sustain damages of at least $830,000.00.

376.   By reason of Naples Injury and Coles' conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

## TWENTY-EIGHTH CAUSE OF ACTION
### Against Naples Injury and Coles
### (Common Law Fraud)

377.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-167, above.

378.   Naples Injury and Coles intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Naples Injury for the Fraudulent Services.

379.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Naples Injury was in compliance with Florida law and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

380.   Naples Injury and Coles intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Naples Injury that were not reimbursable.

381.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $830,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by Naples Injury and Coles through Naples Injury.

382.   Naples Injury and Coles' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

383.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-NINTH CAUSE OF ACTION
### Against Naples Injury and Coles
### (Unjust Enrichment)

384.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-167, above.

385.   As set forth above, Naples Injury and Coles have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

386.   When GEICO paid the bills and charges submitted or caused to be submitted by Naples Injury and Coles through Naples Injury, it reasonably believed that it was legally obligated to make such payments based on Naples Injury and Coles' improper, unlawful, and/or unjust acts.

387.   Naples Injury and Coles have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Naples Injury and Coles voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

388.   Naples Injury and Coles' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

389.   By reason of the above, Naples Injury and Coles have been unjustly enriched in an amount to be determined at trial, but in no event less than $830,000.00.

## **JURY DEMAND**

390.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.    On the First Cause of Action against Orlando Injury, for a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Orlando Injury has no right to receive payment for any pending bills submitted to GEICO;

B.    On the Second Cause of Action against Coles, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $170,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.    On the Third Cause of Action against Orlando Injury and Coles, for compensatory damages in an amount to be determined at trial but in excess of $170,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

D.    On the Fourth Cause of Action against Orlando Injury and Coles, for compensatory damages in an amount to be determined at trial but in excess of $170,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

E.    On the Fifth Cause of Action against Orlando Injury and Coles, for more than $170,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

F.    On the Sixth Cause of Action against St. Lucie Wellness, for a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that St. Lucie Wellness has no right to receive payment for any pending bills submitted to GEICO;

G.    On the Seventh Cause of Action against Coles, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $360,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

H.    On the Eighth Cause of Action against Coles, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $360,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.    On the Ninth Cause of Action against St. Lucie Wellness and Coles, for compensatory damages in an amount to be determined at trial but in excess of $360,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

J.      On the Tenth Cause of Action against St. Lucie Wellness and Coles, for compensatory damages in an amount to be determined at trial but in excess of $360,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

K.      On the Eleventh Cause of Action against St. Lucie Wellness and Coles, for more than $360,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

L.      On the Twelfth Cause of Action against Visionary Health, for a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Visionary Health has no right to receive payment for any pending bills submitted to GEICO;

M.      On the Thirteenth Cause of Action against Coles, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $190,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

N.      On the Fourteenth Cause of Action against Coles, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $190,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

O.      On the Fifteenth Cause of Action against Visionary Health and Coles, for compensatory damages in an amount to be determined at trial but in excess of $190,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

P.      On the Sixteenth Cause of Action against Visionary Health and Coles, for compensatory damages in an amount to be determined at trial but in excess of $190,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

Q.      On the Seventeenth Cause of Action against Visionary Health and Coles, for more than $190,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

R.      On the Eighteenth Cause of Action against Palm Beach Medi-Chiro, for a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Palm Beach Medi-Chiro has no right to receive payment for any pending bills submitted to GEICO;

S.      On the Nineteenth Cause of Action against Coles, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $490,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

T.     On the Twentieth Cause of Action against Coles, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $490,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

U.     On the Twenty-First Cause of Action against Palm Beach Medi-Chiro and Coles, for compensatory damages in an amount to be determined at trial but in excess of $490,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

V.     On the Twenty-Second Cause of Action against Palm Beach Medi-Chiro and Coles, for compensatory damages in an amount to be determined at trial but in excess of $490,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

W.     On the Twenty-Third Cause of Action against Palm Beach Medi-Chiro and Coles, for more than $490,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

X.     On the Twenty-Fourth Cause of Action against Naples Injury, for a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Naples Injury has no right to receive payment for any pending bills submitted to GEICO;

Y.    On the Twenty-Fifth Cause of Action against Coles, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess $830,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

Z.    On the Twenty-Sixth Cause of Action against Coles, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $830,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

AA.   On the Twenty-Seventh Cause of Action against Naples Injury and Coles, for compensatory damages in an amount to be determined at trial but in excess of $830,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

BB.   On the Twenty-Eighth Cause of Action against Naples Injury and Coles, for compensatory damages in an amount to be determined at trial but in excess of $830,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper; and

CC.   On the Twenty-Ninth Cause of Action against Naples Injury and Coles, for more than $830,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

2.

Dated:    March 18, 2025

*/s/ Max Gershenoff*
Max Gershenoff (FBN 1038855)
John P. Marino (FBN 814539)
Kristen L. Wenger (FBN 92136)
Lindsey R. Trowell (FBN 678783)
Steven T. Henesy (FBN 1038474)
RIVKIN RADLER, LLP
Riverplace Tower
1301 Riverplace Blvd.
Suite 1000
Jacksonville, FL 32207
Phone:  (904) 791-8948
Facsimile:  (904) 598-6225
Max.Gershenoff@rivkin.com
John.Marino@rivkin.com
Kristen.Wenger@rivkin.com
Lindsey.Trowell@rivkin.com
Steven.Henesy@rivkin.com
*Counsel for Plaintiffs*